Zimmerman, J.
 

 At the outset of this opinion, two
 
 general
 
 propositions must be conceded: (I) In Ohio, the power to regulate, control and define the practice of law reposes in the judicial branch of the government. 4 Ohio Jurisprudence, 423, Section
 
 5; Land Title Abstract & Trust Co.
 
 v.
 
 Dworken,
 
 129 Ohio St., 23, 193 N. E., 650. And this is true elsewhere. See,
 
 In re Opinion of the Justices,
 
 289 Mass., 607, 194 N. E., 313, and cases therein cited. (2) A corporation cannot lawfully engage in the practice of law; nor can it do so indirectly through the employment of qualified lawyers.
 
 Land Title Abstract & Trust Co.
 
 v.
 
 *86
 

 Dworken, supra;
 
 Section 8623-3, General Code of Ohio ; 4 Ohio Jurisprudence, 429, Section 12; 10 Ohio Jurisprudence, 888, Section 663; 5 American Jurisprudence, 276, Section 25.
 

 In the disposition of this case
 
 upon the record
 
 there are two questions to he answered. They will be stated and discussed separately. The first is as follows:
 

 Are state banks in Ohio, having trust powers, engaged in the unauthorized practice of law, when, through regularly employed and salaried officers and employees who are generally attorneys at law admitted to practice in Ohio, they prepare and draft wills, trust agreements and contracts for their customers and patrons, in which instruments the banks are named in fiduciary capacities?
 

 The leading case'in this state'relating to the unauthorized practice of law is
 
 Land Title Abstract & Trust Co.
 
 v.
 
 Dworken, supra.
 
 There, in the first paragraph of the syllabus, the following rule is announced:
 

 ‘ ‘ 1. The practice of law is not limited to the conduct of cases in court. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the
 
 management
 
 of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law.”
 

 The acts stressed in the above definition as constituting the practice of law are
 
 the performance of legal services for others.
 
 A corporation is “an artificial being, invisible, intangible, and existing only in contemplation of law.”
 
 Trustees of Dartmouth College
 
 v.
 
 Woodward,
 
 4 Wheat., 518, 4 L. Ed., 629, quoted in
 
 State, ex rel. Crabbe, Atty. Genl.,
 
 v.
 
 Thistle Down Jockey Club, Inc.,
 
 114 Ohio St., 582, 590, 151 N. E., 709, 711. It can function only through its officers, agents or representatives. A salaried trust officer
 
 *87
 
 or employee of a bank or trust company, regularly employed, whether a member of the bar or not, is as much an integral and essential part of its organization as the president or cashier. Corporations may not practice law. Therefore, when a trust company through its attorney-employee performs services for customers or patrons in drafting wills, trust agreements, or contracts and other instruments requiring the exercise of legal skill, such corporation must be held to be practicing law within the quoted definition from the
 
 Dworke.n case.
 
 And this fact is not altered by the inclusion of the trust company in such instruments as a fiduciary.
 

 There can be no doubt that the drawing of wills and trust agreements for others, especially as a confirmed occupation, constitutes the practice of law to an important degree. Their preparation requires a considerable knowledge of the law, and includes the imparting of legal advice to their creators. When a testamentary disposition of property is made by such instruments, they must, if unrevoked, be administered, and sometimes interpreted, by a court of proper jurisdiction.
 

 Furthermore, when an attorney-employee of a trust company prepares- legal documents of the character denoted for the patron or customer of the corporation, the latter is deprived of the offices of an independent legal counselor; patently the allegiance of the attorney-employee is to his employer. “The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence. It cannot be delegated without consent, and it cannot exist between an attorney employed by a corporation to practice law for it, and- a client of the corporation, for he would be subject to the directions of the corporation, and not to the directions of the client.”
 
 In Re Co-operative Law Co.,
 
 198 N. Y.,
 
 *88
 
 479, 483, 92 N. E., 15, 16, 32 L. R. A. (N. S.), 55, 58, 139 Am. St. Rep., 839, 842, 19 Ann. Cas., 879, 881.
 

 In recent years the question now engaging our attention has been before many of the courts of this country, in varying forms, and the holdings' in most instances have been to the effect that the preparation of wills, trust agreements, and other instruments calling for the application of legal knowledge, by a bank or trust company for its customers or patrons, through its employees who may be qualified attorneys at law, constitutes' the unauthorized practice of law.
 
 People, ex rel. Illinois State Bar Assn.,
 
 v.
 
 Peoples Stock Yards State Bank,
 
 344 Ill., 462, 176 N. E., 901;
 
 People
 
 v.
 
 Peoples Trust Co.,
 
 180 App. Div., 494, 167 N. Y. Supp., 767;
 
 In re Eastern Idaho Loan & Trust Co.,
 
 49 Idaho, 280, 288 P., 157, 73 A. L. R., 1323;
 
 In re Otterness,
 
 181 Minn., 254, 232 N. W., 318, 73 A. L. R., 1319;
 
 Cam, Pres., Bar Assn. of N. D.,
 
 v.
 
 Merchants National Bank & Trust Co. of Fargo,
 
 66 N. D., 746, 268 N. W., 719. Compare,
 
 State, ex rel. Indianapolis Bar Assn.,
 
 v.
 
 Fletcher Trust Co.
 
 (Ind. Sup.), 5 N. E. (2d), 538. And it would seem to make no difference that the bank or trust company is named as a fiduciary in such instruments.
 
 People, ex rel. Committee on Grievances of Colorado Bar Assn.,
 
 v.
 
 Denver Clearing House Banks,
 
 99 Colo., 50, 59 P. (2d), 468;
 
 State, ex rel. Miller, Circuit Atty.,
 
 v.
 
 St. Louis Union Trust Co.,
 
 335 Mo., 845, 74 S.
 
 W.
 
 (2d), 348.
 

 Both the reasoning and the results' in the eases cited appeal to us in the main as sound, and we find ourselves in accord generally with their pronouncements.
 

 It follows that the first question propounded calls for an affirmative answer,
 
 i. e.,
 
 when state banks in Ohio, having trust powers, pursue the practices described for their customers and patrons, they are engaged in the unauthorized practice of law. Of course, this would preclude them from representing by advertise
 
 *89
 
 ments or otherwise that they possess the privilege of engaging in such practices.
 

 It should not be inferred from anything we have said that the attorney for a testator or settlor may not confer with the bank through its officers and attorneys on any matter of mutual interest having to do with the appointment of the bank as a fiduciary. Nor do we mean to say that the bank is precluded from stipulating the terms under which it is willing to undertake the execution of the trust.
 

 The second question for decision is as follows:
 

 When state banks in Ohio, having trust powers, have been appointed fiduciaries and are acting as such, and have duly admitted attorneys at law in their regular employ on a salary basis, and those attorneys draft legal papers incident to the administration of the trusts and appear in the Probate Court and other courts for and on behalf of the banks as such fiduciaries, are the banks engaged in the unauthorized practice of law?
 

 This question presents a more difficult and complex problem.
 

 Sections 710-159 and 710-160, General Code of Ohio, expressly confer upon trust companies, authorized to do business in Ohio, the right to act in fiduciary capacities, including the roles of executor, administrator, trustee, agent and guardian of the estate, “under the same circumstances and in the same manner, and subject to the s'ame control by the court having jurisdiction * * * as in the case of a legally qualified person.” These statutes have existed in their present form since the year 1919, and so far as we are apprised their validity has never been challenged by court action, and is not challenged in the present case. Section 10506-1, General Code, a part of the Probate Code, includes corporations under a definition of the term “fiduciary.” Pursuant to this' statutory authority, trust companies in Ohio have frequently been named and appointed as fiduciaries and have executed and are executing the
 
 *90
 
 duties entrusted to them in such capacities. Being corporations, the management of the affairs relating to the trusts in their hands must be assumed by their officers and employees. Of necessity, a corporate fiduciary has to be regarded and treated much as a natural person filling the same position, and the statute so provides.
 

 Executors, administrators, trustees and the like, are charged by law with non-delegable duties. 18 Ohio Jurisprudence, 243, Section 189; 40 Ohio Jurisprudence, 350, Section 131. Different sections of the Probate Code describe various acts which shall or may be performed by fiduciaries. For example, see Sections 30504-10, 10504-23, 10506-33, 10506-41, 10506-46, 10506-59, 10506-60, 10507-3, 10507-15, 10507-22, 10507-31, 10507-32, 10507-42, 10509-4, 10509-41, 10509-45, 10509-56, 10509-57, 10509-85, 10509-112, 10509-118 and 10509-121, General Code.
 

 Quite often fiduciaries hold legal title to the estates in their control. Executors and administrators occupy the position of personal representatives of decedents, and are court officers, subject to control, discipline and removal for good cause. They must collect debts due an estate and sue the debtors if necessary. Fiduciaries are also liable for the return and payment of taxes upon personalty and realty, and the same statement applies as to inheritance and estate taxes. Sections 5336, 5343, 5343-2, 5345-3, 5345-4, 5345-5, 5680, 5684, 5685 and 10509-121, General Code; Title 31, Section 192, and Title 26, Section 420
 
 et seq.,
 
 U. S. Code. Other instances of equal importance could be mentioned.
 

 Executors, administrators, trustees and other fiduciaries may be personally accountable for mismanagement, misconduct or neglect in connection with an estate in their charge.
 
 Morris
 
 v.
 
 Mull,
 
 110 Ohio St., 623, 114 N. E., 436;
 
 Moeller
 
 v.
 
 Poland et al., Exrs.,
 
 80 Ohio St., 418, 89 N. E., 100; 18 Ohio Jurisprudence, 293, Section 235.
 

 
 *91
 
 Since practicing law involves the performance of services for others, any individual is accorded the right to do his own legal work either in court or out. Upon such theory it would appear to have been generally recognized in Ohio that fiduciaries may act for themselves in the execution of their offices, in and out of court, if, being competent to do so, they care to assume that burden. Sections 10506-3 and 10509-193, General Code; 18 Ohio Jurisprudence, 431, Section 339; 40 Ohio Jurisprudence, 350, Section 131; Rockel’s1 Complete Ohio Probate Practice (4 Ed.), 427, Section 508,
 
 et seq.;
 
 Adams & Hosford, Ohio Probate Practice and Procedure (2 Ed.), observation on page 590, also page 655, subdivision 15. Strictly speaking,‘‘ executors and administrators are personally liable for the services of attorneys employed by them.”
 
 Thomas, Admx.,
 
 v.
 
 Moore,
 
 52 Ohio St., 200, 39 N. E., 803.
 

 While it is true that a fiduciary, whether a trust company or a natural person, is answerable to creditors, distributees, beneficiaries, heirs,
 
 cestuis que trustents,
 
 wards, and the like, in that the estate must be administered with due regard for tbeir interests, that is not destructive of the proposition that the fiduciary has a very real, vital and substantial interest to conserve on his or its own account — a direct and primary interest, if you please. Responsibility for the proper execution of the trust rests solely on the fiduciary.
 

 As previously noted, trust companies are empowered by.law to act as fiduciaries. Such right is not disputed. In performing the legal phases of that businéss, attorney-employees are acting for their employers. They are engaged in an occupation directly connected with their employers’ authorized undertaking. They are not acting for others, except as others may be incidentally affected. The trust company is then doing its own recognized business through lawyers of its own selection. Whether they are salaried
 
 *92
 
 employees within the organization, or outside lawyers receiving a fee for their services, is therefore not important in such a situation. See
 
 Hanson
 
 v.
 
 Federal Land Bank of Omaha,
 
 63 S. D., 622, 628, 262 N. W., 228, 231;
 
 In re Kelsey,
 
 186 App. Div., 95, 100, 173 N. Y. Supp., 860, 863, 37 N. Y. Cr. Rep., 299.
 

 If those interested in an estate, such as' beneficiaries or creditors, are dissatisfied with the manner in which the fiduciary is proceeding, they are at liberty to employ independent counsel of their own choice to protect their interests. A variety of statutory remedies is available to them.
 

 Pursuing the discussion further, paragraph four of the syllabus in
 
 Land Title Abstract & Trust Co.
 
 v.
 
 Dworken, supra,
 
 reads:
 

 “4.
 
 The statutes of this state recognizing title guarantee and trust companies were enacted for the purpose of enabling such companies to guarantee titles' to real estate, but not for the purpose of performing acts which constitute the practice of law. Section 9850, General Code, authorizing title guarantee and trust companies to prepare and furnish abstracts and certificates of title to real estate, does not permit such companies to issue a certificate containing an opinion as to the condition or validity of titles which are not guaranteed by such companies.”
 

 That statement, and the pertinent part of the opinion on which it is based, carries the unmistakable implication that services performed by such companies exclusively in the business of guaranteeing titles, even though they do touch upon the practice of law, should not be branded as illegal, being merely incidental to a sanctioned enterprise.
 

 In other words, so long as title guarantee and trust companies confine their activities to performing services beneficial to themselves in the prosecution of their approved business, the necessarily appurtenant benefits of a legal complexion to other persons does not
 
 *93
 
 make such, pursuit unlawful. See
 
 People
 
 v.
 
 Title Guarantee & Trust Co.,
 
 227 N. Y., 366, 125 N. E., 666;
 
 People
 
 v.
 
 Title Guarantee & Trust Co.,
 
 191 App. Div., 165, 181 N. Y. Supp., 52 (affirmed 230 N. Y., 578, 130 N. E., 901). Illustrating the thought expressed in a pertinent manner, we note the case of
 
 Rosenthal
 
 v.
 
 Lawyers County Trust Co.,
 
 156 Misc., 910, 911, 282 N. Y. Supp., 868, 869, where it is said:
 

 “The ordinary business corporation cannot act as a trustee. Only corporations chartered as trust companies, and expressly authorized to act in such capacity, can serve as trustees. And in such cases, though some of the'services required may invade the practice of law, if they are necessarily incident to the proper execution of the trust, they may be sanctioned.
 
 (Land Title Abstract & Trust Co.
 
 v.
 
 Dworken,
 
 129 Ohio St., 23, 193 N. E., 650.) Reference should also be had to the New York citations specifically stressed in the opinion of the Ohio Supreme Court
 
 (supra).
 
 But the seeming necessity for the sanction of such incidental special powers cannot be converted into a license for further corporate infringement upon the exclusive right of the individual to practice law, and no court is willing to invite further encroachments.”
 

 The attitude of the Supreme Court of Michigan is shown by its opinion in the case of
 
 Detroit Bar Assn.
 
 v.
 
 Union Guardian Trust Co.,
 
 282 Mich., 216, when it said:
 

 “The statute (3 Comp. Laws, 1929, Sec. 12018) expressly confers upon such corporations [trust companies] the power to act generally as agents or attorneys in the management of estates, to serve as executors, administrators, trustees, receivers or assignees, or guardians under an appointment by court and other kindred powers. We have already stated herein that we are of the opinion this statute is not unconstitutional in granting such powers to these cor
 
 *94
 
 porations notwithstanding they may he thereby authorizqd to engage in some types of business which are within or border closely upon certain phases of the practice of law as that term is considered in the decisions of various courts. * * *
 

 “It would seem to be a necessary inference that the Legislature contemplated that such companies should thereby be authorized and empowered to present matters * * * which were ordinarily incident to the execution of their respective trusts to the courts in the same manner and to the same extent as might an individual serving in like capacity; and the Legislature must have intended to empower trust companies to carry on these activities as a part of their regular business. The conclusion is that the Legislature in passing the pertinent statutes must have contemplated that a trust company so authorized might perform, as a part of its regular established business, the ordinary and incidental services relative to a trust which it had assumed, provided that for the rendering of such services it made no charge other than that of the fees provided by statute.”
 

 Undoubtedly a trust company acting as a fiduciary must adhere to the business of executing the trust. It has no right or authority to give independent legal advice to those beneficially interested, to perform legal services directly for them, or to advise or act for others claiming some interest in the trust estate, where such advice or acts would partake of a legal nature.
 

 We are therefore constrained to answer the second question asked in the negative.
 

 Our attention has been directed to the cases of
 
 Bennie
 
 v.
 
 Triangle Ranch Co.,
 
 73 Colo., 586, 216 P., 718, and
 
 Mullin-Johnson Co.
 
 v.
 
 Penn Mutual Life Ins. Co.
 
 (D. C. Cal.), 9 F. Supp., 175, to which might be added
 
 Mortgage Commission of New York
 
 v.
 
 Great Neck Improvement Co.,
 
 162 Misc., 416, 295 N. Y. Supp., 107, in support of the tenet that a corporation cannot
 
 *95
 
 conduct its own cases in court by one of its officers. However, upon analysis, the holdings in those cases are confined to the proposition that an ordinary business corporation may not prosecute or defend a legal action in which it is directly concerned through an officer or agent who is not a duly admitted attorney at law.
 

 It may also be appropriate to remark that upon its facts and in principle the instant case is distinguishable from those cases in which certain corporations and associations have been held to be engaged in the unauthorized practice of law by the employment of attorneys to represent the customers of or subscribers to such corporations or the members of such associations, in various legal matters. 73 A. L. R., annotation beginning at page 1332; 105 A. L. R., annotation beginning at page 1371;
 
 In re Shoe Mfgs. Protective Assn., Inc.
 
 (Mass. Sup.), 3 N. E. (2d), 716;
 
 Richmond Assn. of Credit Men, Inc.,
 
 v.
 
 Bar Assn. of City of Richmond,
 
 167 Va., 327, 189 S. E., 153;
 
 State, ex rel. Freebourn, Atty, Genl.,
 
 v.
 
 Merchants’ Credit Service, Inc.
 
 (Mont. Sup.), 66 P. (2d), 337;
 
 State, ex rel. McKittrick, Atty. Genl.,
 
 v.
 
 C. S. Dudley & Co., Inc.
 
 (Mo. Sup.), 102 S. W. (2d), 895.
 

 In conclusion, this opinion is confined to deciding the precise issues presented by the record in this case, and should be so interpreted by the bench and bar. The question of the propriety of an attorney employed on a salary basis in sharing fees and compensation with others, not attorneys, is not before this court.
 
 In re Otterness, supra.
 

 The judgment of the Court of Appeals is modified in conformity with this opinion, and as so modified will be affirmed.
 

 T
 
 7 , , ,
 
 Judgment modified and affirmed.
 

 Matthias, Day, Williams, Myers and Gorman, JJ., concur.
 

 Weygandt, C. J., concurs in propositions 1, 2 and 3 of the syllabus.