HOOGENBOOM–NOFZIGER, Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS, Respondent.

No. 49T109610TA00128.

Tax Court of Indiana.

June 23, 1999.

Curtis J. Dickinson, David L. Pippen, Dickinson & Abel, Indianapolis, for Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, Vincent S. Mirkov, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, J.

Hoogenboom–Nofziger (HN) appeals a final determination of the State Board of Tax Commissioners (State Board) fixing the assessed value of HN's real property as of the March 1, 1993 assessment date. In this original tax appeal, HN raises a number of issues, which the Court restates as follows:

I) whether the State Board's failure to designate the hearing officer assigned to conduct the administrative hearing regarding HN's Form 131 petition in writing invalidates the State Board's final determination;

II) whether the State Board erred in assigning a C–1 grade to the subject improvement;

III) whether the State Board erred in determining that the subject improvement

did not warrant an obsolescence adjustment; and

IV) whether the assessment of the subject improvement should be invalidated on the basis that Indiana's property tax system is unconstitutional.

## BACKGROUND AND PROCEDURAL HISTORY

■ HN owns an improvement in Elkhart County, which it uses as a real estate sales office. On November 3, 1993, HN filed a Form 130 Petition for Review of Assessment with the Elkhart County Board of Review (BOR) in which HN alleged that the subject improvement should have been assessed under the Residential Pricing Schedule because the subject improvement is a converted dwelling.[1] The BOR concluded otherwise and denied HN's Form 130 petition. HN then filed a Form 131 Petition for Review of Assessment with the State Board. A hearing on HN's Form 131 petition was held before Mr. Steve Schultz, a State Board hearing officer, on May 30, 1996. On September 6, 1996, the State Board issued its final determination. This original tax appeal ensued. Additional information will be added as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ As Indiana's property tax expert, the State Board is afforded great deference when it acts within the scope of its authority. *See King Indus. Corp. v. State Bd. of Tax Comm'rs,* 699 N.E.2d 338, 339 (Ind. Tax Ct.1998). Accordingly, the Court will only reverse a State Board final determination where that determination is unsupported by substantial evidence, is arbitrary or capricious, constitutes an abuse of discretion, or exceeds statutory authority. *See id.*

### Discussion

### I. Designation of the Hearing Officer in Writing

■ When the State Board receives a petition for review, it is required to conduct a

hearing at its earliest possible opportunity. *See* IND. CODE ANN. § 6–1.1–15–4(a) (West Supp.1998). The State Board has the statutory authority to appoint a hearing officer to conduct that hearing on the State Board's behalf. *See* IND. CODE ANN. § 6–1.1–30–11 (West 1989) (amended 1997, effective Jan. 1, 1999); § 4–22–5–1 (West 1991). The State Board is required to appoint the hearing officer by written order in which the State Board must prescribe the hearing officer's duties. IND. CODE ANN. § 6–1.1–30–11; § 4–22–5–1.

In this case, the evidence in the record reveals that the State Board did not adhere to these statutory requirements. At trial, Mr. Schultz testified that the State Board did not give him any written instructions on HN's Form 131 petition. (Trial Tr. at 21). In addition, there is no documentary evidence in the record demonstrating that the State Board appointed Mr. Schultz as a hearing officer in writing or that the State Board prescribed his duties in writing. HN asks that the Court reverse the State Board's final determination on this basis. In HN's view, the failure of the State Board to appoint Mr. Schultz in writing and its failure to prescribe his duties in writing invalidates the hearing upon which the final determination was based. With no valid hearing, HN continues, there can be no valid final determination.

■ As HN correctly notes, the State Board derives its authority from the General Assembly and only has those powers granted by statute. *See State Bd. of Public Welfare v. Tioga Pines Living Ctr.,* 622 N.E.2d 935, 939 (Ind.1993), *cert. denied,* 510 U.S. 1195, 114 S.Ct. 1302, 127 L.Ed.2d 654 (1994); *Matonovich v. State Bd. of Tax Comm'rs,* 705 N.E.2d 1093, 1096 (Ind. Tax Ct.1999), *review denied.* As a result, the State Board may only appoint a hearing officer to conduct a hearing on the State Board's behalf if the State Board follows the statutory prerequisites for a valid appointment. The State

1. Under the regulations, a converted dwelling that is used for commercial purposes should be assessed by using the regulations governing residential improvements. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–4 (1992) (codified in present form at *id.* r. 2.2–11–5.1(a) (1996)).

Board is not permitted to ignore the command of the General Assembly.

■ In this case, as noted above, there is no evidence that the State Board complied with the statutory provisions for the appointment of Mr. Schultz as a hearing officer. However, this issue was raised for the first time in this original tax appeal. Accordingly, the Court must decide whether HN's failure to raise the issue below constitutes a waiver of the issue. The Court concludes that it does and therefore holds that the State Board's final determination will not be reversed on the basis that Mr. Schultz was not properly appointed to conduct the hearing regarding HN's petition for review.

■ The general rule in original tax appeals is that the Court is bound by the evidence and issues raised at the administrative level. *See* IND. CODE ANN. § 33–3–5–14 (West 1996); *State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.,* 420 N.E.2d 1324, 1328 (Ind.Ct.App.1981). Therefore, where a taxpayer fails to raise an issue at the administrative level, the issue is waived and may not be considered by the Court. In this case, HN could have challenged Mr. Schultz's authority to conduct the hearing required by subsection 6–1.1–15–4(a) at the administrative level. HN did not. Instead, HN chose to remain silent and participate in the hearing. By its silence, HN consented to the hearing, despite the irregularities in Mr. Schultz's appointment. HN cannot now complain that the hearing was not valid due to those irregularities. *See Wetzel Enters. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1259, 1262 (Ind. Tax Ct.1998) (procedural protections for benefit of taxpayer may be waived by taxpayer).

■ The Court's conclusion is buttressed by an examination of analogous law. Where a judge pro tempore is appointed to decide a case or act in a case, a litigant must lodge an objection to the authority of the judge pro tempore to preserve his rights on appeal. *See Floyd v. State,* 650 N.E.2d 28, 32 (Ind. 1994); *Pope v. Pope,* 701 N.E.2d 587, 591–92 (Ind.Ct.App.1998) (discussing a timely objection to the authority of a judge pro tempore); *Catellier v. Depco, Inc.,* 696 N.E.2d 75, 77

(Ind.Ct.App.1998). Although State Board hearing officers do not act in a judicial capacity, *see Gatling Gun Club,* 420 N.E.2d at 1328, there is no reason why the reasoning behind the rule with regard to judges pro tempore cannot be applied to State Board hearing officers. In addition, the Court notes that this rule will force taxpayers to object at the administrative level and thereby allow the State Board the opportunity to correct any irregularities *before* the State Board goes through the time and expense of conducting a hearing and issuing a final determination.

## II. Grade

■ The grading of improvements is an important aspect of the True Tax Value System. *See Whitley Prods., Inc. v. State Bd. of Tax Comm'rs,* 704 N.E.2d 1113, 1116 (Ind. Tax Ct.1998), *review denied.* Grades are assigned to improvements on the basis of the quality of their materials, design, and workmanship. *See id.* (citing IND. ADMIN. CODE tit. 50, r. 2.1–4–3 (1992) (codified in present form at *id.* r. 2.2–10–3 (1996))). In addition, where an improvement deviates from the model used to assess that improvement, an assessor may account for that deviation by adjusting the grade of the improvement. *See id.* at 1117. HN complains that the State Board failed to adequately account for the deviation of the subject improvement from the model used to assess the subject improvement. In HN's view, this requires reversal of the State Board's final determination on this issue.

■ Before addressing the merits of this issue, the Court must examine what evidence was presented on this issue at the administrative level. As the case law makes clear, a taxpayer may not base a claim of error on evidence not presented at the administrative level. *See Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1235 (Ind. Tax Ct.1998) (collecting cases). This rule forces taxpayers to make their cases to the State Board. *See id.* This rule holds true even if the taxpayer could have established a right to relief. *See Harbor Food Plaza, Inc. v. State Bd. of Tax Comm'rs,* 638 N.E.2d 898, 901 (Ind. Tax Ct.1994).

█ At the administrative level, Mr. Drew Miller, a property tax consultant handling HN's Form 131 petition presented testimony,[2] a document entitled "Assessment Review and Analysis" (Joint Ex. 3) and photographs of the subject improvement.[3] In his testimony on the grade issue before the State Board, Mr. Miller stated, "Basically, the subject property is [a] wood frame structure more of a residential type construction and varies substantially from the office base model described in the manual [regulations]. To adjust for these differences we would ask for a D grade to be applied." (Joint Ex. 4). The Assessment Review and Analysis makes a similar statement about the grading of the subject improvement, and the only substantive difference between Mr. Miller's testimony and the document was the mention of the small amount of concrete block in the subject improvement. Because this was the only evidence presented at the administrative level, this is the only evidence the Court will consider.

█ In its final determination with respect to the grade issue, the State Board concluded, "After inspection and in consideration of 50 IAC 2.1–4–3(f), it is determined the grade of the building is best described as 'C–1.' No change is made as a result of this issue." (State Bd. Final Determination ¶ 4). This falls well short of what is typically required of the State Board in explaining how it arrived at the grade of an improvement. See Clark, 694 N.E.2d at 1237–38. This "explanation" is nothing more than a conclusory statement, and it is difficult to see how the State Board's determination of grade in this case is based on anything more than the say-so of the State Board and its hearing officer.

█ However, this is by no means the end of the inquiry. Recently, this Court upheld a deficient State Board final determination because this Court determined that the taxpayer's failure to present evidence at

the administrative level meant that the requirement that the State Board support its final determination with substantial evidence was not triggered. See Whitley Prods., Inc., 704 N.E.2d at 1116–21. As a result, due to the taxpayer's failure, the State Board was not required to support its final determination as it normally would have.

The Court sees no reason to rehash its reasoning in Whitley Products here. However, the Court notes that there were two main concerns behind that decision. First and foremost, the Court was concerned with the possibility that the State Board could be forced to make a case for a taxpayer. See generally North Park Cinemas, Inc. v. State Bd. of Tax Comm'rs, 689 N.E.2d 765, 769 (Ind. Tax Ct.1997). Therefore, the Court adopted the rule that the taxpayer must offer probative evidence relating to the error the taxpayer asserts in its petition for review. Whitley Prods., Inc., 704 N.E.2d at 1119–20. The second concern of this Court in Whitley Products was the waste of time and resources that would inevitably occur if taxpayers could simply attack the State Board's methodology in an original tax appeal without first making a factual presentation to the State Board.

The upshot of the Whitley Products decision is that taxpayers have to make a factual case at the State Board level in order for them to get relief in this Court. This rule has a rough justice quality. If a taxpayer cares so little about its case that it does not make a strong factual case at the administrative level, why should the State Board care any more than the taxpayer? In addition, this rule reaffirms the State Board's position as Indiana's property tax expert. It is common knowledge that there are serious problems with the present property taxation system. See State Bd. of Tax Comm'rs v. Town of St. John, 702 N.E.2d 1034, 1043 (Ind.1998)

---

2. At trial, the parties presented a tape recording of the testimony at the State Board hearing. (Joint Ex. 4).

3. At trial, HN offered Mr. Miller's responses to interrogatories from the State Board. The State Board objected to the admission of Mr. Miller's responses on the ground that they contained factual assertions that were not presented at the

administrative level. The Court finds that Mr. Miller's responses contain numerous factual assertions, e.g., the type of tile in the subject improvement, that were not presented at the hearing below. Therefore, the Court SUSTAINS the State Board's objection. See Gatling Gun Club, 420 N.E.2d at 1328.

(cost schedules used to arrive at assessment violate Indiana Constitution); *Town of St. John v. State Bd. of Tax Comm'rs,* 690 N.E.2d 370, 384–87 (Ind. Tax Ct.1997) (some subjective elements of True Tax Value system violate Indiana Constitution), *aff'd in part, rev'd in part,* 702 N.E.2d 1034 (Ind. 1998). These problems make it difficult at times for the State Board to adequately support its final determinations. If the Court were to allow these problems to give taxpayers the ability to simply attack the methodology of a State Board final determination in an original tax appeal without having to make a factual case to the State Board, then the State Board's review of the assessment would be a mere formality. The Court, of course, will not countenance such a situation. The General Assembly has charged the State Board with the administration of this state's property taxation system. The Court will not undermine the State Board's proper role.

In this case, HN made a de minimis factual showing on the grade issue at the administrative level. HN, through its representative, Mr. Miller, offered photographs with no accompanying explanations and only conclusory statements.[4] Of Mr. Miller's statements concerning the grade issue, the only statement that could reasonably be construed as a relevant factual observation concerns the amount of concrete block in the subject improvement. According to Mr. Miller, the subject improvement, unlike the model (GCM Office, *see* IND. ADMIN. CODE tit. 50, r. 2.1–4–7(a) (1992) (codified in present form at *id.* r. 2.2–11–1(24)–(25) (1996))) being used to assess it, contains a small amount of concrete block.[5]

In its final determination, the State Board did not discuss how much the subject improvement deviated from the model in that regard. This would ordinarily mandate reversal. However, in this case it does not. Mr. Miller's statement concerning the amount of concrete block is nothing more than a mere invitation for the Mr. Schultz to inspect the subject improvement and examine the subject improvement for evidence to support Mr. Miller's allegation of error. This was improper: State Board hearing officers do not have the duty to make a taxpayer's case. *See North Park Cinemas, Inc.,* 689 N.E.2d at 769; *see also Clark,* 694 N.E.2d at 1237 n. 10 (State Board hearing officer may assume that specific problems with an assessment will be brought to his attention by taxpayer). Mr. Miller did not state how much of the improvement did not contain concrete block; Mr. Miller did not attend the hearing officer's inspection of the subject improvement so that he could show Mr. Schultz the lack of concrete block in the subject improvement. Instead, Mr. Miller thought that he could provide some pictures, make a general observation and thereby force the State Board to make HN's case.

This Court will not allow such tactics to succeed. As this Court has noted, "The administration of this state's property tax system is best served by having taxpayers make detailed factual presentations ... to the State Board, the acknowledged property tax experts." *Clark,* 694 N.E.2d at 1241. Reversing the State Board's final determination with respect to grade in this case would not serve that goal. In addition, to allow HN to prevail after it made such a cursory showing at the administrative level would result in a tremendous workload increase for the State

---

4. For example, Mr. Miller alleges that the subject improvement is more like a residential structure than an office building. Apparently, Mr. Miller expects the State Board and then this Court to look at the photographs he tendered and surmise what the materials used to build the subject improvement were as well as the interior construction of the subject improvement. The State Board should, and this Court will, do no such thing. Without an accompanying detailed explanation, Mr. Miller's allegation that the subject improvement is similar to a residential structure is merely a conclusory statement of no probative value.

5. Mr. Miller also pointed out that the subject improvement had eight foot wall height and wood frame construction. The regulations prescribe how these features are to be accounted for in arriving at the reproduction cost of an improvement. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–5 Schedule A.1 (1992) (codified in present form at *id.* r. 2.2–11–6 Schedule A.1 (1996)). The State Board properly made the wall height adjustment and wood framing adjustment required by Schedule A.1.

Board, an administrative agency that already bears a difficult burden in administering this State's property tax system. If taxpayers could make a de minimis showing and then force the State Board to support its decisions with detailed factual findings, the State Board would be overwhelmed with cases such as this one. This would be patently unfair to other taxpayers who do make detailed presentations to the State Board because resolution of their appeals would necessarily be delayed.

Mr. Miller's lack of preparation for the administrative hearing in this case is appalling. At trial, as noted above, HN offered Mr. Miller's response to interrogatories to the State Board. In those interrogatories, Mr. Miller made a number of factual assertions that were not presented at the administrative level. These assertions, if true and if properly presented to the State Board with reference to the regulations, would have conclusively demonstrated errors in the assessment. For example, Mr. Miller asserts that the windows contained by the subject improvement were different from those contained in the model. Mr. Miller could have used the unit-in-place tables (which contain the reproduction costs of numerous types of windows, *see* IND. ADMIN. CODE tit. 50, r. 2.1–4–10(11.02) (1992) (codified in present form at *id.* r. 2.2–15–1(11.02) (1996))) to determine the difference in reproduction cost of the windows possessed by the subject improvement and those possessed by the model. As another example, Mr. Miller also referred to the fact that the subject improvement had wood furring instead of metal furring. Once again, the unit-in-place cost tables show the reproduction costs of different types of furring, *see id.* r. 2.1–4–10(12.01), and Mr. Miller could have easily presented this evidence to the State Board.

The only inference from Mr. Miller's failure to present this evidence is that Mr. Miller failed to make a thorough inspection of the property before the administrative hearing. Yet despite his failure, Mr. Miller expected Mr. Schultz to diligently search the subject improvement to find evidence in support of HN's claims. Although the real property tax system is not a self-assessment sys-

tem and State Board hearing officers (at least before January 1, 1999, amendments effective on that date have radically altered the property tax appeal process) perform an inquisitorial function, such an expectation is ludicrous. In this case, Mr. Miller's modus operandi is transparent: Mr. Miller thought that he could do the bare minimum and place the burden on the State Board to make HN's case. The Court will not allow Mr. Miller to abuse the administrative and judicial process in such a manner.

In this case, Mr. Miller has done a real disservice to his client. Instead of diligently pursuing his client's petition for review, Mr. Miller gave his client's case the short shrift. Apparently, Mr. Miller thought that no matter how poor his preparation for the administrative hearing in this case was, this Court would bail him out because of the flawed property tax system under which this state labors. Mr. Miller could not have been more mistaken, and the Court does not look favorably on such a presumptuous attitude. The flaws in this state's property tax system often make it extremely difficult and time-consuming for this Court to resolve property tax disputes. This puts the Court's resources at a premium, and the Court sees no reason why its already scarce resources should be wasted on cases where the taxpayer made such a poor showing at the administrative level.

For the above stated reasons, the Court AFFIRMS the final determination of the State Board with respect to the grade issue.

### III. Obsolescence

█ In its final determination, the State Board found that HN had not presented any evidence of obsolescence in the subject improvement. Therefore, the State Board determined that the subject improvement did not suffer from obsolescence. HN argues that this finding ignored evidence that established causes of obsolescence, namely add-on construction and non-connected basements. The Court cannot agree.

In its presentation to the State Board, HN offered evidence that the buildings had additions and that they had non-connecting basements. However, HN did not present any evidence tending to demonstrate that these

two features caused the subject improvement to experience a loss in value. *See Loveless Constr. Co. v. State Bd. of Tax Comm'rs,* 695 N.E.2d 1045, 1047 (Ind. Tax Ct.1998) (under the regulations, obsolescence causes a loss in value), *review denied.* Therefore, HN's obsolescence claim is fatally deficient. *See White Swan Realty v. State Bd. of Tax Comm'rs,* 712 N.E.2d 555, 560 (Ind. Tax Ct.1999), *petition for review filed,* June 23, 1999. Accordingly, the Court AFFIRMS the State Board's final determination with respect to obsolescence.

## IV. Constitutionality

HN makes a number of arguments concerning the constitutionality of the present property tax system. The thrust of these arguments is that because the system is unconstitutional, any assessment of property under the system must be reversed. However, the Court has held that the mere fact that the system is flawed does not entitle the taxpayer to reversal of an assessment. *See Dana Corp. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1244, 1247 (Ind. Tax Ct.1998); *see also Town of St. John,* 702 N.E.2d at 1043. The Court sees no reason to depart from that holding today.

## CONCLUSION

For the reasons stated above, the Court AFFIRMS the final determination of the State Board.